

03/22/2006

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALAN R. WILLIS AND | § | Case No. 04-20449 |
| DAWNETT L. WILLIS | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| CITIBANK (SOUTH DAKOTA), NA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 05-2003 |
| | § | |
| DAWNETT L. WILLIS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OF DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

Now before the Court in the above-referenced adversary proceeding is the

Plaintiff's Motion for Summary Judgment (the "Motion") filed by the Plaintiff, Citibank

(South Dakota), NA, ("Plaintiff" or "Citibank ") on January 7, 2005.  No response or

objection to the Motion was filed by Dawnett L.Willis ("Defendant" or "Debtor").  Based

upon the Court's consideration of the pleadings and the proper summary judgment

evidence submitted by the parties, the Court concludes that the Plaintiff's Motion for

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

Summary Judgment should be granted.[2]

## Factual and Procedural Background

This adversary proceeding was commenced by the Plaintiff, Citibank, to determine the dischargeability of a debt owed to Plaintiff by Defendant.  Prior to her bankruptcy filing,  Defendant maintained an AT&T Universal Card Account[3] (the "Account") with Plaintiff. Defendant was the authorized user on this account, and made periodic charges on the Account in accordance with the terms of the cardholder agreement.  From June 3, 2004 to June 28, 2004, Defendant made purchases on her Account in the sum of $9,469.66.  Plaintiff contends that these charges were incurred for luxury goods and services and that the Defendant failed to remit payment for these charges.

On September 15, 2004, the Defendant filed her voluntary Chapter 7 petition.[4]  At the time of the filing, Defendant's outstanding balance was $12,273.03.  On January 7, 2005, Plaintiff commenced this adversary proceeding by filing a complaint seeking a judgment against Defendant in the amount of $9,469.66 and seeking to have the debt declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The summons and

---

[2]  This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), and (O).

[3]  The Defendant's account with the Plaintiff, AT&T Universal Card Account No. xxxx-xxxx-xxxx-1753 was clearly identified in an unredacted manner as the relevant "Account" in the definitions contained in Plaintiff's Request for Admissions.  Such definition supersedes the typographical error occurring in the first request for admission which references a Citi Platinum Select Card account.

[4]  Defendant filed jointly with her husband on September 15, 2004 in Case No. 04-20449. This adversary proceeding was commenced against Defendant individually.

complaint were served upon Defendant on January 12, 2005.  Defendant filed an answer to the complaint on January 12, 2005.

On December 14, 2005, Plaintiff served Plaintiff's First Request for Admissions ("Requests") upon counsel for Defendant asking the Defendant to admit as fact certain information relating to Defendant's AT&T Universal Account.  The Defendant failed to respond.  In light of this fact, pursuant to Fed. R. Bankr. P. 7036,[5] Plaintiff's Request for Admissions are deemed admitted.[6]  The Plaintiff contends that the admitted facts are sufficient to establish that the credit card debt of $9,469.66 is non-dischargeable under § 523(a)(2)(A).

---

[5] Fed. R. Bankr. P. 7036, applying Rule 36 of the Fed. R. Civ. P., provides, in part, "The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. P. 36(a).

[6] Among the facts deemed admitted by Defendant are:
a) She incurred the charges on her account;
b) At the time she incurred the charges, her regular monthly expenses exceeded her regular monthly income;
c) She was insolvent when she incurred the charges;
d) When she incurred the charges, she did not have the present ability to repay the charges;
e) When she incurred the charges, she did not expect to be able to repay the charges in the future;
f) When she incurred the charges, the facts and circumstances known to her concerning her ability to repay indicated that she would not be able to repay the charges;
g) That Plaintiff justifiably relied on her representation that she intended to repay the charges she incurred on the Account;
h) That she did not intend to repay the charges she incurred on the Account at the time she incurred them;
i) That when she incurred the charges she was unemployed;
j) That the listed charges made on her Account during the Time Period were for Luxury Goods or Services.

*See* Plaintiff's Motion for Summary Judgment, P-3.

-3-

Plaintiff asserts that through Defendant's continued use of the credit card during the defined time period, that Defendant made a representation that she intended to repay the charges.  It further contends that Defendant made these representations, knowing they were false, with the intent to deceive Plaintiff and to induce Plaintiff to continue to extend credit.  Plaintiff further asserts that it actually and justifiably relied upon these representations, and that this reliance was the cause of Plaintiff's financial loss and damages in the amount of $9,469.66.  For these reasons, Plaintiff seeks Summary Judgment against Defendant in the amount of $9,469.66, and a ruling that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## Discussion

*Standard for Summary Judgment*

Citibank brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the

-4-

"pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  If, as in this case, the burden of persuasion at trial is on the moving party, "that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial."  *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997); *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 698 (S. D. Tex. 1997).

If the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)).  The substantive law will identify which facts are material.  *Id.*

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party.  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  Thus, a non-

movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

*Analysis*

11 U.S.C. §523(a)(2)(A) provides that:

a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To have a debt excepted from discharge pursuant to the "actual fraud" provision in 11 U.S.C. §523(a)(2)(A), an objecting creditor must prove that: (1) the debtor made representations;  (2) at the time they were made the debtor knew they were false;  (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor justifiably relied on such representation; and (5) that the creditor sustained losses as a proximate result of the representations.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision in Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].  In seeking to meet its burden of proof, the Plaintiff is clearly relying upon the

Fifth Circuit decision in *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d

391 (5th Cir. 2001) in order to fulfill the five-prong test for actual fraud in determining

the dischargeability of credit card debt under 523(a)(2)(A).[7]

Distilled to its essentials, *Mercer* stands for the following propositions:[8]

(1)  that each use of a credit card constitutes, as a matter of law, an implied
representation by the debtor to the credit card issuer of an intent to pay the debt
(but not necessarily an ability to repay);[9]

(2)  that a credit card issuer still has the burden to prove that such an implied
representation to pay was knowingly false when made;[10]

---

[7]  As the Fifth Circuit noted in *Mercer*,

> ...most courts considering card-dischargeability have applied elements
> similar to those described in Pentecost for "actual fraud."  Those
> elements are appropriate for determining card-dischargeability
> because....card-use lends itself to that analysis.

*Mercer,* 246 F.3d at 403.

[8]  *Mercer* marked a dramatic shift in this circuit regarding the dischargeability of credit card debt
as a debt procured by actual fraud under §523(a)(2)(A).  In overruling a long-standing precedent
articulated in *Davison-Paxon Co. v. Caldwell*, 115 F. 2d 189 (5th Cir. 1940), *cert denied*, 313 U.S. 564,
61 S. Ct. 841, 85 L.Ed. 1523 (1941), which stood for the requirement that a creditor seeking to uphold its
evidentiary burden to establish the nondischargeability of a debt under 523(a)(2)(A) had to establish the
existence of an actual overt action or representation by a debtor, rather than just concealment of
insolvency or an inability to repay, the Fifth Circuit found that the rationale underlying Davison-Paxon
had been "seriously eroded in the modern world of credit transactions," *Mercer*, 246 F.3d at 404, thereby
necessitating new legal standards under which the five *Pentecost* factors are to be evaluated in
determining the dischargeability of credit card debts under § 523(a)(2)(A) — given the fact that credit
card transactions involve no face-to-face dealings between the credit card issuer and a particular debtor.

[9]  *Mercer*, 246 F.3d at 404-07.

[10]  A Defendant's representation of intent to repay is false "if the maker knows or believes ... the
matter is not as represented, does *not* have the confidence in the accuracy of his representation as
implied, or knows ... he does *not* have the basis for his representation as stated or implied."  *Mercer,* 246
F.3d at 407, *citing* RESTATEMENT (SECOND) OF TORTS §526 (emphasis in original and internal quotations
omitted).  To assist in making that evaluation, *Mercer* endorses the review of the following factors to
discern a credit card debtor's subjective intent:

-7-

(3)  that if, as an issue of fact, the Court determines that the implied representation to pay was knowingly false, then an intent to deceive the issuer by the Debtor is also present as a matter of law;[11]

(4) that actual reliance by the issuer on the implied representation to pay is established as a matter of law if the credit card issuer extends a loan to the debtor at his request;[12]

(5) that the issuer's reliance upon the implied representation to pay is justifiable "as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable;"[13] and

(6) that, if the debtor falsely represented an intent to pay and the creditor justifiably relied on that misrepresentation, then the creditor's loss (the unpaid loan) resulted from that reliance as a matter of law.[14]

---

(1)  the time between the card use and bankruptcy filing;
(2)  whether the debtor consulted a bankruptcy attorney prior to the card use;
(3)  the number of charges;
(4)  the amount of the charges;
(5)  the debtor's financial condition at card use;
(6)  whether the credit limit was exceeded;
(7)  whether multiple charges were made on the same day;
(8)  whether the debtor was employed or had employment prospects at the time of the charges;
(9)  the debtor's financial sophistication;
(10)  whether the debtor's buying habits suddenly changed; and
(11)  whether luxuries or necessities were purchased.

*Mercer,* 246 F.3d at 408.  "These factors are nonexclusive; none is dispositive; nor must the debtor's contact satisfy a minimum number to constitute fraudulent intent." *Id.*

   [11]  *Id.* at 411.

   [12]  *Id.* at 415-16. ["In sum, an issuer usually will be able to establish *actual* reliance by showing it would *not* have approved the loan in the absence of debtor's promise to pay (through card-use)." (emphasis in original)].

   [13]  *Id.* at 421.

   [14]  *Id.* at 425.

In this case, by virtue of Defendant's deemed admissions, even when viewed in the light most favorable to the Debtor-Defendant, the proper summary judgment evidence offered by the Plaintiff establishes without controversy that, by utilizing her credit line with the Plaintiff, the Defendant made an implied representation to the Plaintiff of her intent to repay the debt. This representation was false based upon the admitted facts that the Defendant had no ability to pay those charges, that she was unemployed when she utilized the credit line to incur the charges, and that she was admittedly insolvent at the time of each representation and "did not have the present ability to repay the charges," and "she did not expect to be able to repay the charges in the future." Because the Plaintiff's summary judgment evidence establishes that the Defendant's representation to pay was knowingly false, then the Defendant's intent to deceive the issuer based upon such false representations existed as a matter of law. Actual reliance by the Plaintiff is also established as a matter of law because of the uncontested fact that the Defendant invoked the credit line offered by the credit card, leading the Plaintiff to extend such credit. The summary judgment evidence establishes that the Plaintiff's reliance upon the Defendant's false representations was justifiable in that there is no summary judgment evidence that even suggests the existence of any red flags which should have triggered any question by the Plaintiff about the Defendant's intent to repay the debt. Finally, because it is uncontested that the Defendant falsely represented an intent to pay the debt and the Plaintiff justifiably relied on that misrepresentation, then the Plaintiff's loss

arising from the unpaid account charges resulted from that justifiable reliance as a matter

of law.  These conclusions are buttressed by the invocation of the presumption of non-

dischargeability which has attached to this particular debt pursuant to 11 U.S.C.

§523(a)(2)(C).[15]

Accordingly, the Plaintiff has made a *prima facie* showing that it is entitled to a

summary judgment against the Defendant to recover the amount of $9,469.66 and that

such debt should be declared non-dischargeable debt under §523(a)(2)(A).   The burden

accordingly shifts to the Defendant under Fed. R. Civ. P. 7056(e) to set forth specific

facts demonstrating that there is a genuine issue of material fact for trial or that judgment

should not otherwise be entered as a matter of law.[16]  As previously stated, the Defendant

---

[15]   11 U.S.C. §523(a)(2)(C)(i)(I) provides that:

[C]onsumer debts owed to a single creditor and aggregating more than $500 for luxury
goods or services incurred by an individual debtor on or within 90 days before the order
for relief under this title are presumed to be nondischargeable.

11 U.S.C. 523(a)(2)(C)(ii)(II) provides:

[T]he term "luxury goods or services" does not include goods or services reasonably
necessary for the support or maintenance of the debtor or a dependent of the debtor.


[16]   Fed. R. Civ. P. 56(e), as incorporated into bankruptcy adversary proceedings by Fed. R.
Bankr. P. 56, states, in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an
adverse party may not rest upon the mere allegations or denials of the adverse party's
pleading, but the adverse party's response, by affidavits or as otherwise provided in this
rule, must set forth specific facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if appropriate, shall be entered
against the adverse party.

-10-

did not respond to the motion for summary judgment in any way.[17]

The Court therefore concludes that the Plaintiff, Citibank (South Dakota), NA, is entitled to summary judgment that it should recover the sum of $9,469.66 from the Defendant, Dawnett L. Willis, and that such debt should be declared non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A). An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 3/22/2006

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[17]   The Court's procedure in this context is governed by Local District Court Rule CV-56, which is incorporated into all bankruptcy adversary proceedings by LBR 7056(d). Subsection (c) of that rule provides as follows:

> (c) In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an un-designated genuine issue of material fact for trial before entering summary judgment.